UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

EDDIE DARNELL JONES, SR.

CRIMINAL ACTION

NO. 19-72-JWD-EWD

RULING AND ORDER

This matter comes before the Court on the *Motion to Withdraw Guilty Plea* (Doc. 76) filed by Defendant Eddie Darnell Jones, Sr. ("Defendant"). The United States of America ("the Government") opposes the motion. (Doc. 79.) Oral argument was heard on March 11, 2021. (Doc. 83.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

I.    Relevant Factual Background

A.  Defendant's Original Guilty Plea

On June 20, 2019, a federal grand jury returned a three-count Indictment against Defendant charging him with: (1) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count One); (2) possession with intent to distribute MDMA and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii) (Count Two); and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three). (Doc. 1.) Following Defendant's initial appearance, (Doc. 8), on July 5, 2019, Phillip House filed a motion to enroll for Defendant. (Doc. 10.) House represented that he had been retained. (*Id.*) In the instant motion, Defendant represents that he and his family gave House nearly ten thousand

dollars to represent Defendant, and House did not say House was ineligible or had a conflict of interest. (Doc. 76-1 at 1.)

On July 10, 2019, a detention hearing and arraignment was conducted before the Magistrate Judge. (Doc. 14.)  Defendant stipulated to detention; was informed of the maximum possible penalties associated with the charges pending against him, including the enhanced penalties; and pled not guilty to each count of the Indictment. (*Id.*)

Following this hearing, the Magistrate Judge entered a scheduling order. (Doc. 16.)  She set the substantive motion deadline as July 30, 2019. (*Id.*)

On July 15, 2019, counsel for the Government provided discovery to House. (U.S. Ex. 1, Doc. 79-1.)  Such discovery included (1) a DVD containing East Baton Rouge Sheriff's Office ("EBRSO") video footage, recorded jail calls, and documents (including the search warrant, affidavit, accompanying attachments, and return); and (2) a thumb drive containing the contents of Defendant's cell phone, which were obtained as a result of a forensic examination conducted pursuant to a search warrant. (*Id.*)  In the cover letter, counsel for the Government specifically stated, "Per our conversation, I am still awaiting the lab results on the substances seized from Mr. Jones' vehicle and will provide those results to you as soon as I receive them." (*Id.* at 1.)

Before the substantive motion deadline, House filed an unopposed motion for an extension of time to file such motions. (Doc. 17.)  House represented that he received additional discovery on July 17, 2019, that "included dozens of videos, audio jail phone recordings, and police reports concerning the alleged controlled substances purchases as well as accompanying reports." (*Id.* ¶ 2.)  House said he was "unable to review all the discovery himself and also been unable to take these items to East Baton Rouge Parish Prison to review with Mr. Jones." (*Id.*)  Defendant's motion

was granted on July 30, 2019, and he was given an additional fifteen days from the date of the filing of his motion. (Doc. 18.)

On August 12, 2019, House filed two motions to suppress. (Docs. 19, 20.)  In the first, House claimed that officers unlawfully searched Defendant's vehicle, and he sought to exclude all evidence obtained from that search. (Doc. 19.)  In the second, House argued that the Magistrate Judge lacked sufficient probable cause to issue the search warrant of Defendant's phone and that any information seized from that search should be suppressed. (Doc. 20.)  The motion hearing was set for November 6, 2019. (Doc. 26.)

On August 21, 2019, counsel for the Government sent a letter to House supplementing her earlier productions with a DEA Chemical Analysis Report. (U.S. Ex. 2, Doc. 79-2.)  The report concerned the amount of pure methamphetamine that was seized, which was about 70.0g. (*Id.* at 2.)   As the Government points out (Doc. 79 at 3, 3 n.9), such amount affected the mandatory minimum penalty Defendant faced had the Government sought a superseding indictment. *Compare* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) (providing 10-year mandatory minimum for 50 grams or more of methamphetamine), *with* 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) (providing a 5-year mandatory minimum for 50 grams or more of a substance or mixture containing a detectable amount of methamphetamine).

The Government represents in briefing that, after House received this report, he requested a meeting with counsel for the Government. (Doc. 79 at 3.) The following week, House and his associate, attorney Karl Ludwig, a CJA panel member, met with counsel for the Government to discuss the case and Defendant's potential sentencing exposure. (*Id.*)

On September 4, 2019, the Government filed a combined opposition to both motions. (Doc. 24.)  Thereafter, on September 26, 2019, the hearing was reset to November 6, 2019, because of a previously set jury trial. (Docs. 25, 26.)

On October 8, 2019, House filed a notice of intent for Defendant to plead guilty to the charges in the original Indictment pursuant to a plea agreement. (Doc. 27.)  Defendant represents in briefing that he signed the written plea agreement on the advice of counsel without waiting to learn whether the seized evidence would be admissible against him. (Doc. 76-1 at 2.)  Defendant also urges that there was outstanding discovery, which will be discussed in the next section.

On November 7, 2019, a re-arraignment was held. (Doc. 29.) Defendant pled guilty to all three counts. (Docs. 29, 30.)

### B.  Defendant's Second Guilty Plea

On November 14, 2019, counsel for the Government sent to House a Scientific Analysis Report of the Louisiana State Police Crime Laboratory ("LSPCL") which was obtained by the Government on the day before. (U.S. Ex. 3, Doc. 79-3.)  According to the Government, the EBRSO had previously reported that they found 1002 dosage units of "multi-colored Ecstasy pills," which field tested for the presence of MDMA. (Doc. 79 at 4 n.14.)  However, the LSPCL report indicated that "the suspected MDMA and suspected Xanax were analyzed and confirmed to be methamphetamine and flobromazolam, respectively." (U.S. Ex. 4, Doc. 79-4.)  On the same day, counsel for the Government alerted the probation officer and advised that she and House would "need a little bit of time to discuss the next steps." (*Id.*)

Thereafter, counsel for the Government brought the matter to the attention of the Court by email on November 19, 2019. (U.S. Ex. 5, Doc. 79-5.)  She explained the situation and stated that she and House had preliminarily agreed to proceed via superseding bill of information and

superseding plea agreement, in connection with a motion to withdraw Defendant's November 7, 2019 guilty plea. (*Id.*)  The next day a status conference was set for December 16, 2019. (Docs. 33, 34.) [1]

On the morning of December 16, 2019, House emailed the Courtroom deputy, with a CC to counsel for the Government, saying that he had a chance to visit with Defendant and that Defendant had signed the amended plea agreement and waivers. (U.S. Ex. 6, Doc. 79-6.)  House also represented that he would file an unopposed motion to withdraw the plea that afternoon. (*Id.*)

On the same day, a Superseding Bill of Information and waiver of indictment were filed. (Docs. 35, 36.)  As counsel for the Government notes (Doc. 79 at 4), and as Defendant agrees (Doc. 76-1 at 2), the only difference between the Superseding Bill and the original Indictment was that MDMA was removed from Count Two. (*Compare* Doc. 1, *with* Doc. 35.)  It should be noted that Defendant was still not charged with the pure methamphetamine crime carrying the higher mandatory minimum. (*See* Doc. 35.)  The superseding plea agreement also removed any reference to MDMA or Xanax and revised the quantities of methamphetamine. (*See* Doc. 40 at 6–7.)

On December 17, 2019, House filed the unopposed motion to withdraw guilty plea and notice to plead guilty to amended charges. (Doc. 37.)  The following day, the Court granted the motion to withdraw. (Doc. 38.)  The Court then set the Initial Appearance and Arraignment.  (Doc. 39.)

Both occurred on the scheduled day—January 24, 2020, over a month after Defendant signed the waiver of indictment and superseding plea agreement. (Docs. 42, 43.)  For the Initial Appearance, the Superseding Bill of Information was read, informing Defendant of the pending

---

[1] These contemporaneous emails between counsel for the Government and probation (U.S. Ex. 4, Doc. 79-4) and the Court (U.S. Ex. 5, Doc. 79-5) contradict Defendant's representations that, "Shortly after Mr. Jones entered his plea, the lab reports came back, and it was revealed that the MDMA with which he was charged was not, in fact, MDMA, *or any other controlled substance.*" (Doc. 76-1 at 2 (emphasis added).)

charges. (Doc. 42.) The Magistrate Judge also reviewed the waiver of indictment with Defendant, who confirmed his understanding. (*Id.*)

After this hearing, the arraignment took place, and Defendant pled guilty to all three counts. (Doc. 43.) The details of this hearing with Defendant will be provided below. Suffice it to say at this point, the Court went through an extensive colloquy with Defendant pursuant to Federal Rule of Criminal Procedure 11, ensuring, *inter alia*, that Defendant knew the maximum possible penalties of his offense, (Doc. 67 at 23–24); that he agreed to the factual basis in the plea agreement, (*id.* at 19–22); that he knew the elements of the offense and agreed that he in fact did them, (*id.* at 29–31, 33); and that his plea was knowing and voluntary, (*id.* at 3–5, 8–11, 27–29, 33–34.) The Court found that the Defendant was "fully competent and capable of entering an informed plea, that [he] [was] aware of the nature of the charges and the consequences of the plea and the maximum possible punishment[,]" and "that the plea of guilty [was] knowing[] and voluntar[y] and . . . supported by an independent basis in fact to each of the essential elements of the offense." (*Id.* at 33.) The Court accepted the guilty plea, adjudged Defendant guilty, and ordered that a PSR be prepared. (*Id.* at 34.)

### C. House's Conflict, Enrollment of the Federal Public Defender's Office, and the Defendant's Sentencing

On April 21, 2020, the PSR was filed. (Doc. 50.) The sentencing was set for June 10, 2020. (Doc. 51.)

On April 22, 2020, House filed a motion to extend the sentencing date. (Doc. 52.) He represented that he needed to review the PSR and any sentencing memorandum with Defendant before sentencing. (*Id.* ¶ 1.) However, Defendant had tested positive for COVID-19 and had been transported to Camp J at Louisiana State Penitentiary at Angola until further notice. (*Id.* ¶ 2.) Thus, House could not meet with him under the State Stay-At-Home Order then in effect. (*Id.* ¶ 3.) House

requested that the sentencing be rescheduled until Defendant was no longer a health threat and the Stay-At-Home Order was lifted. (*Id.*)  The Court granted the motion and reset the sentencing. (Doc. 53.) Defendant later filed a second motion to continue (Doc. 54), and the sentencing was reset again for September 29, 2020, (Doc. 55).

On August 14, 2020, House filed a motion for a status conference "for the purpose of discussing issues surrounding a conflict of interest." (Doc. 57 at 1.)   In his supporting memorandum, House explained that he was in the process of researching information contained in the PSR, and one item in Paragraph 42 of the report was a 2005 conviction for possession of cocaine in the 19th Judicial District Court, Baton Rouge, Louisiana. (Doc. 57-1 at 1; Doc. 50 at 10.)  Defendant was sentenced to five years imprisonment, which was suspended, and he served five years' probation. (Doc. 50 at 10.)  Probation was later revoked, and Defendant was sentenced to two years imprisonment, with credit for time served. (*Id.*)  In researching the revocation hearing, House learned that he was the Assistant District Attorney who conducted the hearing. (Doc. 57-1 at 1.)  House states, "This conviction and revocation hearing is an item counsel intends to object to in defending Mr. Jones.  Therefore, a conflict would exist in my representation at sentencing." (*Id.*)

Defendant notes in briefing that House offered no explanation for his failure to discover the issue when he did his initial conflict check prior to enrolling fourteen months earlier. (Doc. 76-1 at 3.)  House was also silent as to his failure to raise the issue until four months after he first received the PSR. (*Id.*)

In any event, Defendant's motion was granted, and a status conference was set for August 27, 2020, (Doc. 58), and then reset for September 1, 2020, (Doc. 61)  Defendant also filed a motion

for extension of time to make objections to the PSR. (Doc. 59.)  The Court granted this motion and gave Defendant until September 3, 2020. (Doc. 60.)

At the September 1, 2020, status conference, House informed the Court that he had an actual or potential conflict arising out of his representation of the government in a prior state court matter involving the Defendant and which could be the basis for an objection to the PSR. (Doc. 63 at 1.)  Counsel orally moved to withdraw.  (*Id.*)  The Court granted the motion and referred the matter to the Office of the Federal Public Defender for accepting appointment to represent Defendant or recommending counsel from the CJA panel. (*Id.*)  The deadline for filing objections to the PSR was suspended, and the sentencing was continued. (*Id.* at 1–2.)

On October 20, 2020, current counsel for Defendant made a transcript request for the arraignment. (Doc. 66.)  That transcript was filed on October 29, 2020. (Doc. 67.)

The next day, the Government filed a motion to set the sentencing. (Doc. 69.)  Two days later, the motion was granted, (Doc. 70), and sentencing was set for November 17, 2020, (Doc. 71).

On November 3, 2020, defense counsel filed a sentencing memorandum on Defendant's behalf. (Doc. 72.)  Two days later, on November 5, 2020, the Addendum was filed. (Doc. 74.) This document noted that defense counsel had no objections to the PSR—not even to the issue highlighted by House. (*Id*.)

Twelve days later, on November 17, 2020, Defendant appeared for sentencing. (Doc. 75.) There, Defendant advised the Court for the first time that he wished to withdraw his guilty plea and not go forward with the sentencing. (*Id.* at 1.)  Defense counsel requested time to discuss the matter with his client, and the Court granted his request, giving him forty-five days to file a motion

to withdraw the guilty plea. (*Id.*)  The Government was given twenty-one days to respond. (*Id.*)  The sentencing was then continued. (*Id.*)

On December 24, 2020, Defendant filed the instant motion to withdraw his guilty plea. (Doc. 76.)  The Government filed an opposition on January 19, 2021. (Doc. 79.)  The matter was set for hearing on February 24, 2021, (Doc. 78), and then rescheduled for March 11, 2021, (Doc. 82).

On that day, the hearing was held. (Doc. 83.)  Counsel presented arguments, largely reiterating what was said in briefing. (*Id.*)  Defendant requested that the Court receive the entire record as his evidence in support of the motion. (*Id.*)  The Court took the matter under advisement. (*Id.*)

## II.    Discussion

### A.  Relevant Standard

"A defendant does not have an absolute right to withdraw his guilty plea." *United States v. Lord*, 915 F.3d 1009, 1014 (5th Cir.), *cert. denied*, 140 S. Ct. 320 (2019) (citing *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003)). "Instead, the district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a 'fair and just reason.' " *Id.* (quoting *Powell*, 354 F.3d at 370); *see also United States v. Herrod*, 595 F. App'x 402, 409 (5th Cir. 2015) ("the trial court's decision regarding a withdrawal motion must be accorded broad discretion." (citing *United States v. Carr*, 740 F.2d 339, 344 (5th Cir. 1984)).  "The burden of establishing a 'fair and just reason' for withdrawing a guilty plea remains at all times with the defendant." *Lord*, 915 F.3d at 1014 (citing *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996)).

"In considering whether to permit withdrawal of a plea, the district court should address the seven factors set forth in [the Fifth Circuit's] opinion in *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984)." *Lord*, 915 F.3d at 1014.  Such factors include:

> (1) whether the defendant asserted his actual innocence; (2) whether withdrawal would prejudice the Government; (3) the extent of the delay, if any, in filing the motion to withdraw; (4) whether withdrawal would substantially inconvenience the court; (5) whether the defendant had the benefit of close assistance of counsel; (6) whether the guilty plea was knowing and voluntary; and (7) the extent to which withdrawal would waste judicial resources.

*Id*. (citing *Carr*, 740 F.2d at 343–44).  " '[N]o single factor or combination of factors mandates a particular result,' and 'the district court should make its determination based on the totality of the circumstances.' " *Id*. (quoting *Still*, 102 F.3d at 124). "The district court is not required to make explicit findings as to each of the *Carr* factors." *Id.* (citing *Powell*, 354 F.3d at 370).

Additionally, a district court errs in refusing to address a defendant's ineffective assistance of counsel claim in connection with a motion to withdraw guilty plea.  *United States v. Urias-Marrufo*, 744 F.3d 361, 365, 368 (5th Cir. 2014); *see also United States v. Strother*, 977 F.3d 438, 446 n.3 (5th Cir. 2020) ("In *Urias-Marrufo*, we vacated and remanded a district court's denial of the defendant's plea withdrawal motion because the district court erroneously held that it *could not* address the defendant's ineffective assistance of counsel claim in connection with the defendant's motion to withdraw her plea.").  In *Urias-Marrufo*, the Fifth Circuit said that the question of whether defendant's guilty plea was knowing and voluntary was "inextricably tied" to the ineffective assistance of counsel claim. 744 F.3d at 365–66; *see also Strother*, 977 F.3d at 445 (5th Cir. 2020) (analyzing ineffective assistance of counsel issue under this factor).

## B. Defendant's Assertion of Innocence

### 1. Parties' Arguments

Defendant asserts that, though he "has not expressed absolute factual innocence to undersigned counsel, there still remains the possibility that the case against him was not legally sound and would have resulted in an acquittal at trial." (Doc. 76-1 at 6.)  Defense counsel does not know why House convinced Defendant to plead guilty before the Court ruled on the motions to suppress. (*Id.*)  "Because Mr. House instigated the guilty plea before the hearing on the outstanding motions to suppress had occurred, undersigned counsel has no way of gauging the merits of the motions, and cannot at this time say with any confidence that they were meritless." (*Id.*)  Defense counsel also asserts that House "has rebuffed attempts to discuss the case" with current defense counsel, "making it impossible to determine what his alleged strategy was in filing the motions then going forward with a plea without waiting for a ruling." (*Id.*)  Defendant himself cannot clarify the issue but says that he "went along with whatever Mr. House told him to do, largely because he had paid him so much money." (*Id.*)  Defendant concludes, "although [he] has not asserted factual innocence, the possibility of acquittal cannot be foreclosed." (*Id.*)

The Government responds:

> The defense is in possession of all discovery in this case, has the benefit of two fully briefed motions to suppress, has considered the PSR (and failed to file any objections thereto), and has had months to consider, formulate and articulate any possible legal challenge to the defendant's guilty pleas in this case. The totality of circumstances clearly undermines counsel's assertion that he "has no way of gauging the merits of the [suppression] motions" or of determining the defense's "alleged strategy" of entering guilty pleas. The United States respectfully submits that if indeed there was a colorable legal argument to make, the defendant's highly skilled and competent counsel would surely have brought that to the Court's attention in the instant motion. Instead, the defense merely raises the vague "possibility" of a legal challenge.

(Doc. 79 at 9.)  The Government maintains that there are "myriad reasons – strategic and otherwise – for a defendant"  to notify the Government and the Court of his intention to plead guilty, particularly where that defendant does not assert actual innocence, as is the case here. (*Id.*)

The Government continues by stating that, in the Fifth Circuit, even if actual innocence is asserted, a defendant must support his claim with sufficient evidence. (*Id.* at 9–10.) Here, Defendant has not done so. (*Id.*)  In any event, the stipulated factual basis in the plea agreement provides a detailed account of the underlying conduct. (*Id.* at 10.)  Defendant had thirty-nine days between the signing of the superseding plea agreement and the re-arraignment to decide to go forward. (*Id.*)  Moreover, at the re-arraignment, Defendant made several affirmative declarations that he was guilty as charged and that the factual basis was in fact what happened and what the Government could prove at trial. (*Id.*)

The Government then details other parts of the re-arraignment hearing and the colloquy with Defendant and concludes:

> It is well established that solemn declarations in open court carry a strong presumption of verity. The course of these proceedings, culminating with the defendant's oral request to withdraw his guilty pleas just prior to this Court pronouncing sentence, indicates that it was his applicable Guidelines range—not any revelation with respect to his guilt or innocence— that prompted the defendant to move to withdraw his plea. Because the defendant confessed to the crimes in open court, and has not made any attempt to assert his actual innocence, this *Carr* factor weighs heavily against the defendant's request to withdraw his guilty pleas.

(Doc. 79 at 12 (cleaned up) (citations omitted).)

### 2. Analysis

Again, the first *Carr* factor is "whether the defendant asserted his actual innocence." *Lord*, 915 F.3d at 1014 (citing *Carr*, 740 F.2d at 343–44).  Having carefully considered the matter, the

Court finds that this *Carr* factor weighs strongly in favor of the Government.  The Court bases this on two reasons.

First, "the mere assertion of innocence, absent a substantial supporting record will not be sufficient to overturn a denial of a motion to withdraw." *United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991) (citing *Carr*, 740 F.2d at 344).  "[U]nder *Carr*, this factor is insufficient on its own in the total absence of evidence to support the assertion, since a contrary rule would grant the defendant an unappropriate ability to reverse his decision to plead guilty." *United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996) (citing *Carr*, 740 F.2d at 344); *see also United States v. London*, 568 F.3d 553, 563 (5th Cir. 2009) ("Although London asserts his innocence, the assertion is unconvincing, especially where London makes no effort to discuss the knowing and voluntary nature of his plea."(citing *United States v. Puckett*, 505 F.3d 377, 383 (5th Cir. 2007) (addressing belief that a brain tumor caused defendant to commit crime and stating that "[t]his bald assertion, without more, does not justify withdrawal"); *Bond*, 87 F.3d at 701; *United States v. Ambrose*, 159 F.3d 1356, 1998 WL 699039, at *3 (5th Cir. 1998) (unpublished) (citing *Bond* and holding that "[b]ecause there was no evidence to support his assertion of innocence, this factor weighed in favor of the Government"))).

Here, Defendant has failed to support his assertion of innocence with a "substantial supporting record." *Clark*, 931 F.2d at 295.  Instead, Defendant raises only the "possibility of acquittal." (Doc. 76-1 at 6.)  Further, the Court agrees with the Government that current defense counsel, who has been enrolled since at least November 3, 2020, and who is an extremely capable and talented attorney, has had an adequate time to analyze and articulate why House's motions to suppress were meritorious.  Rather, Defendant has presented the Court with a "total absence of

evidence to support the assertion" of innocence, and the Fifth Circuit has specifically found this to be inadequate. *See Bond*, 87 F.3d at 701.

Second, the Fifth Circuit has found that a district court did not abuse its discretion in placing little weight on a defendant's assertion of innocence when he made several affirmative declarations during his rearraignment that he is guilty as charged; this was "[b]ecause 'solemn declarations in open court carry a strong presumption of verity[.]' " *See United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) (citing *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001)); *see also Herrod*, 595 F. App'x at 409 ("Furthermore, Herrod acknowledged his guilt on the record at his guilty plea hearing, and through a signed factual statement—in which he admitted the facts underlying his offense. '[S]olemn declarations in open court carry a strong presumption of verity.' " (quoting *McKnight*, 570 F.3d at 649) (citing *Clark*, 931 F.2d at 294 ("Though Clark claims he has asserted his innocence throughout the government's investigation, he did plead guilty under oath to a federal district judge.")); *see also Strother*, 977 F.3d at 444 ("Given Strother's consistent, repeated statements in court affirming that he understood the required elements of his charge up until the time of his plea withdrawal motion, we find that the district court did not clearly err" in finding Defendant's contentions that "he did not understand that his conduct did not satisfy the requirements of 18 U.S.C. § 922(g)(1) when he pleaded guilty" were not "supported by the record.").

Here, as in *McKnight* and *Herrod*, the Court places little weight in Defendant's assertions of innocence given the numerous affirmative declarations he made during the arraignment that he was guilty as charged.  As the Government details, Defendant  acknowledged that he read the Superseding Bill of Information, (Doc. 67 at 5); that he discussed it with House and understood it, (*id.* at 6); that House answered any questions he had, (*id.*); and that he understood the charges

against him, (*id.* at 8). Further, the Superseding Bill of Information was read to Defendant. (*Id.* at 6–8.) Later, counsel for the Government read the detailed factual basis from the superseding plea agreement, after which time Defendant acknowledged that he understood what was read and that it was what happened and what he did. (*Id.* at 19–22.) Defendant was also asked:

> THE COURT: ARE YOU PLEADING GUILTY BECAUSE YOU ARE, IN FACT, GUILTY OF THE CHARGED OFFENSES AND FOR NO OTHER REASON?
>
> THE DEFENDANT: NO OTHER REASON.

(*Id.* at 28.) Toward the end of the hearing, Defendant again admitted that the Government's factual basis was what happened and what he did, and he then admitted to each essential element of the offence. (*Id.* at 29–31.) Finally, Defendant again stated that he was pleading guilty because he was in fact guilty of the charges described in the Superseding Bill of Information. (*Id.* at 32–33.) Again, "solemn declarations in open court carry a strong presumption of verity," *McKnight*, 570 F.3d at 649 (quoting *Lampazianie*, 251 F.3d at 524), and Defendant has done little to rebut that presumption.

In sum, Defendant has failed to support his assertion of innocence with substantial evidence, and this assertion contradicts many sworn admissions of guilt made during the re-arraignment. Consequently, the Court finds that this factor weighs strongly in favor of the Government.

### C. Prejudice to the Government

Defendant maintains that there is no prejudice to the Government:

> The only potential harm to the Government's case is the general impact of the passage of time on the memories of the witnesses. Here, the witnesses all consist of law enforcement officers, who are able to rely on the reports they prepared at the time of the offense to refresh their recollections of any pertinent details.

(Doc. 76-1 at 6.)  Defendant asserts that such "hypothetical prejudice" is insufficient "to force [him] to maintain his plea of guilty." (*Id.*)

The Government responds that it would suffer some prejudice, as "[a] defendant's timely decision to enter a guilty plea allows the Government to avoid preparing for trial and permits the Government and the Court to allocate their resources efficiently" and whereas Defendant's "decision *not* to do so, and to later withdraw properly entered guilty pleas, has the opposite effect." (Doc. 79 at 22.)  In any event, the Fifth Circuit has said that the absence of prejudice is not sufficient to require withdraw of a guilty plea where "no credible reason is proffered." (*Id.* (citation omitted).)

Having carefully considered the matter, the Court agrees with both parties in part.  On the one hand, Defendant is correct that the Government has not shown any prejudice beyond that which it would experience when any defendant withdraws a guilty plea. *Cf. Clark*, 931 F.2d at 295 (deferring to and accepting the district court's conclusion that the government would be prejudiced due to "renewing an investigation long after it had been terminated, the absence from governmental service of several key governmental investigators and the fact that most of the records are no longer in a convenient form.").

But, more importantly, the Government is correct about the significance of this factor; "*Carr* made clear that the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea." *Lord*, 915 F.3d at 1015 (quoting *McKnight*, 570 F.3d at 649 (citing *Carr*, 740 F.2d at 344 ("[T]he absence of a showing of prejudice to the government, by itself, should be sufficient to mandate permission to withdraw a plea when, as here, no credible reason is proffered.")).  Thus, this factor alone is not enough to grant Defendant's motion.

### D.  Length of and Reasons for Delay

#### 1. Parties' Arguments

As to the factors dealing with delay, Defendant argues that, though a year passed between the entry of the guilty plea and his motion to withdraw, the motion was in reality filed "at the earliest possible time, due to the peculiar circumstances of this case." (Doc. 76-1 at 7.)  Defendant cites House's failure to perform a conflict check, which "undermines the reliability of the guilty plea, especially when considered in conjunction with his other failings." (*Id.*)  Defendant then asserts:

> The truly relevant time frame when considering the timeliness of the motion to withdraw the guilty plea is the 11-week period between the case being referred back to the Office of the Federal Public Defender ("FPD") on September 1, 2020 and the November 17, 2020 sentencing hearing when Mr. Jones unambiguously expressed his desire to withdraw his guilty plea. Under the circumstances, an 11-week delay is not unreasonable.  During that time, undersigned counsel was attempting to obtain all pertinent information on the case from both the Government and former defense counsel, requesting transcripts from the court reporter, and attempting to prepare a mitigation argument for the quickly upcoming sentencing hearing, all while dealing with reduced access to his client due to the on-going COVID-19 pandemic.

(*Id.*)  According to Defendant, he as a layman could not be expected to be aware of House's shortcomings. (*Id.*)

The Government responds first by emphasizing that the instant motion was filed "nearly one year after his re-arraignment, and he has offered no good reason or explanation for his lengthy delay in moving to withdraw his guilty pleas." (Doc. 79 at 12.)  This is particularly true considering the thirty-nine days lapse between the signing of the superseding plea agreement and the re-arraignment. (*Id.*)  Further, no motion was filed, even after new counsel enrolled; he made no

objections to the PSR; and he "filed a thoughtful and considered sentencing memorandum, acknowledging the applicable Guideline range[.]" (*Id.* at 13.)

The Government asserts that, even if the Court were to consider Defendant's use of an 11-week timeline, his argument would still fail. (*Id.*) The matter has been referred to the Federal Public Defender's Office since September 1, 2020, and it presumably had all relevant files since then. (*Id.*) Further, the transcript of the arraignment was filed into the record on October 29, 2020, and the Government requested the matter be set for sentencing the next day. (*Id.*) By November 2, 2020, defense counsel had notice that the sentencing was set for November 18, 2020. (*Id.*) Thereafter, he did not file a motion to withdraw guilty plea but rather filed a sentencing memorandum which reflected his understanding of the case. (*Id.* at 13–14.)

The Government maintains that Defendant's objections about House and his declaration that the delay was not his fault are "non-specific and conclusory." (*Id.* at 14.) "Whether the Court finds that the defendant waited 11 months or 11 weeks, the defendant's delay weighs against withdrawal under the *Carr* factors" under Fifth Circuit caselaw. (*Id.*)

### *2. Analysis*

The third *Carr* factor is "the extent of the delay, if any, in filing the motion to withdraw[.]" *Lord*, 915 F.3d at 1014. The Court also considers at this point "the reason why defenses advanced later were not proffered at the time of the original pleading," and "the reasons why a defendant delayed in making his withdrawal motion." *Carr*, 740 F.2d at 344.

" '[T]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion.' " *Lord*, 915 F.3d at 1015 (quoting *Carr*, 740 F.2d at 344). "This requires a defendant to bear an even greater burden in proving the delay was justified." *Clark*, 931 F.2d at 295.

Having carefully considered the matter, the Court finds that this factor weighs in favor of the Government. The Fifth Circuit has recognized that delays much shorter than six months "have been deemed unacceptable." *Lord*, 915 F.3d at 1015 (citing *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (describing a six-week delay as "significant"); *United States v. Rinard*, 956 F.2d 85, 88–89 (5th Cir. 1992) (holding that a 69-day delay weighed against defendant); *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988) (holding that a seven-week delay weighed against withdrawal); *Carr,* 740 F.2d at 345 (finding that the motion "was not promptly filed" 22 days after the plea). Thus, *Lord* and its authority make clear that, whether the Court considers a delay of a year or eleven weeks, Defendant has simply waited too long.

Further, with respect to the delay factor, the Fifth Circuit has explained:

> The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

*Herrod*, 595 F. App'x at 410 (quoting *Carr*, 740 F.2d at 345). Thus, in *Herrod*, the Court found:

> The fact that the PSR's recommended sentence prompted Herrod to move to withdraw his plea suggests that he was making a tactical decision—not that his plea was unknowingly made. *See Hurtado,* 846 F.2d at 997 (rejecting argument that delay was justified because the defendant "had been thinking and meditating [about] how [his] attorney influenced [him]" (internal quotation marks omitted)); *Thomas,* 13 F.3d at 153 ("[The defendant]'s explanation that his plea resulted from bad advice and pressure from his attorney would carry more weight had his withdrawal been prompt."). This is not a case in which, for example, Herrod had "communicated doubts regarding the guilty plea" soon after he pleaded guilty. *McKnight,* 570 F.3d at 650. . . . Even if we were to consider only the delay between the filing of the PSR and the filing of the motion to withdraw, that period—more than three months—is still longer than the delays in the cases cited above. . . . Thus, Herrod's substantial delay in filing the motion to withdraw his plea weighs heavily in the Government's favor.

*Id.* at 410–11.

Similar reasoning applies here. As will be explained more extensively below, there is little about House's potential conflict that would weigh in favor of invalidating the guilty plea. But, even putting that aside, this matter was referred to the Federal Public Defender on September 1, 2020. (Doc. 63.) Presumably, upon appointment, current defense counsel (who, again, is extremely talented and experienced) was given all of House's files, including all discovery provided by the Government. Defendant waited over a month and a half until October 20, 2020, to request a transcript of the arraignment hearing. (Doc. 66.) The transcript was filed on October 29, 2020 (Doc. 67), and the sentencing was set on November 2, 2020, for November 17, 2020, (Doc. 71.) Defendant did not file a motion to withdraw at that time but instead, on November 5, 2020, filed a sentencing memorandum assessing the case and arguing why a particular sentence was justified. (Doc. 72.) Again, defense counsel made no objection to the issue highlighted by House. (Doc. 72.) Twelve days later, on November 17, 2020, Defendant appeared for sentencing, and only then did he raise for the first time his desire to not go forward with sentencing. (Doc. 75.) Considering all these circumstances—the fact that there was nothing about House's conflict that would have prevented Defendant from moving to withdraw his plea earlier; the fact that Defendant did not previously " 'communicate[] doubts regarding the guilty plea' soon after he pleaded guilty," *Herrod*, 595 F. App'x at 411 (quoting *McKnight*, 570 F.3d at 650); and the fact that the decision to withdraw was raised only at the time of sentencing, after "the PSR's recommended sentence," *id.* at 410—the Court finds that, as in *Herrod*, Defendant's motion to withdraw from his guilty plea was not to "to permit him to undo a plea that was unknowingly made at the time it was entered" but rather "to make a tactical decision to enter a plea, wait" either about a year or 11-

weeks, "and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty,"

*id.*

In sum, considering the lengthy delay in this case (either about a year or 11 weeks), and

considering the totality of circumstances supporting the conclusion that Defendant's motion was

merely a tactical choice, the Court finds this factor weighs in favor of the Government.

### E.  Close Assistance of Counsel

#### 1. Parties' Arguments

Defendant argues that he was denied close assistance of counsel because House failed to

negotiate a favorable plea agreement and failed to inform anyone of his conflict of interest. (Doc.

76-1 at 9.)  Indeed, House induced Defendant to plead guilty to charges of which he was not guilty

with respect to the first plea agreement. (*Id.*)  Even the superseding plea agreement was not

favorable, as it contained a ten-year mandatory minimum. (*Id.*)  Defendant asserts:

> Mr. Jones asserts that his conversations with Mr. House left him
> with the belief that those minimums did not necessarily apply. Once
> more, Mr. House has not supplied any information to the contrary.
> Mr. House also failed to explain to Mr. Jones his reason for
> abandoning the pending motions to suppress before a hearing on the
> matter was even held. All things considered, Mr. House cannot be
> said to have provided Mr. Jones with close assistance of counsel.

(*Id.*)

Additionally, Defendant was denied constitutionally effective counsel by House.[2] (*Id.*)

Defendant explains:

> While Mr. Jones and current counsel are unable to state with any
> specificity the precise nature of the conflict, once again due to Mr.
> House's refusal to discuss the issue, the mere fact that Mr. House
> himself thought the conflict so severe as to preclude his further

---

[2] Some of Defendant's argument here overlap with the next *Carr* factor—whether Defendant's plea was knowing and
voluntary.  However, the Court will provide all ineffective assistance of counsel arguments in this section and analyze
them in both sections.

> representation of Mr. Jones clearly indicates that there was an actual
> conflict and that it impacted his performance on behalf of Mr. Jones.

(*Id.* at 10.)  Defendant that House failed to communicate, as Defendant "genuinely thought that the mandatory minimum sentences connected to the charges to which he pled guilty did not apply to his specific case." (*Id.*)  Defendant states:

> While the warning provided by the Court during the plea colloquy
> would ordinarily cure any defect in counsel's performance with
> regard to sentencing limits, the sheer volume of errors made by Mr.
> House in the defense of Mr. Jones suggests that he may indeed have
> suggested to Mr. Jones that such language was mere boilerplate and
> inapplicable to his case.

(*Id.*)  Defendant did not enter into his plea knowingly and voluntarily but rather took House "at his word, and did as he was instructed by the attorney to whom he had given all the money he and his family could gather together, little knowing that the attorney was failing to live up to his ethical obligations." (*Id.*)

Defendant argues that, under *Strickland v. Washington*, 466 U.S. 668 (1984), House's conduct was unreasonable because (1) House failed to wait for the lab report before pleading guilty and (2) House encouraged Defendant to plead guilty despite filing motions to suppress and despite the fact that the discovery process was not over. (Doc. 76-1 at 10–11.)  As to the second *Strickland* requirement—prejudice—this factor is "more difficult to pin down.  Because Mr. House did not permit the hearing on the motions to suppress to occur, and because Mr. House refuses to discuss the case with current counsel, it really is not clear what would have happened if the case had been properly handled." (*Id.* at 11.)  Defendant concludes:

> Here we are faced with a convoluted and murky record, lacking
> much of the information needed to make a firm argument that the
> results would have been different had Mr. Jones had proper
> assistance of counsel. However, it also cannot necessarily be said
> that the results would have been the same had Mr. Jones had the
> benefit of effective assistance of counsel. Thus, the interests of

> justice favor allowing Mr. Jones to withdraw his guilty plea and
> allowing competent counsel to attempt a different result.

(*Id.*)

The Government responds that Defendant had close assistance of counsel throughout the proceedings. (Doc. 79 at 14.)  He enrolled early, requested additional time to review discovery and consult with his client, filed two motions to suppress, consulted with another "seasoned federal criminal defense attorney," met with the Government following the DEA lab report, and advised Defendant of the best course of action. (*Id.* at 14–15.)  The Government then goes through the plea colloquy at the arraignment, which demonstrates that Defendant said he was satisfied with House's representation and that House complied with his obligations. (*Id.* at 15–16.)

The Government also disputes Defendant's contention that House did not advise Defendant of a conflict or negotiate a favorable plea deal.  As to the former:

> [N]either attorney House nor the defendant realized that they had
> crossed each other's path a decade earlier. When that fact was
> brought to the attention of attorney House, in connection with
> researching the facts set forth in the PSR, he acted responsibly in
> notifying the United States and the Court of the potential conflict.

(*Id.* at 16.)  House raised the issue because he was researching a possible objection to the PSR involving a state court proceeding in which House was involved. (*Id.*)  The Government emphasizes that Defendant did not even file an objection to that proceeding (or any other objection). (*Id.*)  Thus, the Government urges that Defendant can have no ineffective assistance of counsel claim, as Defendant determined he had no legal or factual basis for challenging the state court matter and thus any conflict was "merely potential or hypothetical." (*Id.* at 17.)

As to Defendant's claim that House did not negotiate a favorable plea deal, the Government says, "there is simply no truth to [t]his contention . . . particularly in light of the damning DEA lab report." (*Id.*)

### 2. Analysis

"[W]hether a defendant had close assistance of counsel does not turn on whether counsel found legal authority to support a viable defense." *Lord*, 915 F.3d at 1015–16.  "In weighing this factor, we look to whether counsel was available to the defendant throughout the proceedings, including whether counsel negotiated the defendant's plea agreement, and whether a defendant was satisfied with his defense counsel." *Id.* at 1016; *see also Strother*, 977 F.3d at 446 ("We have previously found that close assistance of counsel was available where counsel negotiated a plea agreement, filed motions, discussed the case with the defendant, and explained the defendant's rights and the weight of the evidence, and where counsel was available throughout the proceedings and the defendant expressed satisfaction with counsel." (internal citations omitted)); *Herrod*, 595 F. App'x at 411 (finding this factor weighed for government where defendant's attorney— "privately retained counsel he had chosen—negotiated a plea agreement on his behalf" and where, "[i]mportantly, at his plea hearing, [defendant] stated that he was satisfied with the assistance of his counsel." (citations omitted)); *Urias-Marrufo*, 744 F.3d at 365 (listing as factor whether attorney "negotiat[ed] a favorable plea agreement with the government" (citing *Carr*, 740 F.2d at 342–43)).    Courts also look at whether the attorney informed defendant of potential conflicts of interest. *Urias-Marrufo*, 744 F.3d at 365 (citing *Carr*, 740 F.2d at 342–43).  Ultimately, "[w]hether a defendant received close assistance of counsel is 'a fact-intensive inquiry.' " *Lord*, 915 F.3d at 1016 (quoting *Urias-Marrufo*, 744 F.3d at 365 (quotation omitted))

"This inquiry is distinct from whether she received effective assistance of counsel." *Urias-Marrufo*, 744 F.3d at 365 (citing *McKnight*, 570 F.3d at 646).  "Ineffective assistance is a basis for invalidating a conviction under the Sixth Amendment and is not, strictly speaking, relevant to the decision of whether Defendant was denied close assistance of counsel under *Carr* analysis." *Id*.

(citing *McKnight*, 570 F.3d at 646). "Counsel's assistance may be close without being effective." *Id.* at 366.

Having carefully considered the issue, the Court finds that this *Carr* factor weighs heavily in favor of the Government. House enrolled in the case a few weeks after the original Indictment. (Docs. 1, 10.) He received discovery from the Government, (U.S. Ex. 1, Doc. 79-1), and he sought additional time from the Court to review it and file substantive motions, (Doc. 17). House filed two motions to suppress on Defendant's behalf as well. (Docs. 19, 20.) While Defendant complains that House withdrew the motions before obtaining a ruling, he does little to show that these motions were in fact meritorious or would have affected the outcome of the proceedings, despite having the burden on this motion and despite having forty-five days to do so. (Doc. 75.)

Further, contrary to Defendant's current representations, House negotiated a very favorable plea. As the Government points, (Doc. 79 at 3, 3 n.9), and as outlined above, House received the DEA report, (U.S. Ex. 2, Doc. 79-2), which showed a higher amount of pure methamphetamine, and which, again, would have resulted in a higher mandatory minimum sentence had the Government sought a superseding indictment, (*compare* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) (providing 10-year mandatory minimum for 50 grams or more of methamphetamine), *with* § 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) (providing a 5-year mandatory minimum for 50 grams or more of a substance or mixture containing a detectable amount of methamphetamine). The Government represents in briefing (Doc. 79 at 3) that House requested and met with counsel for the Government (along with CJRA panel member Karl Ludwig), and only after that meeting and the Government's opposition to the motions to suppress, (Doc. 24), did House file the notice of intent to plead guilty, (Doc. 27). Under the circumstances, House negotiated a favorable plea for

Defendant, which makes this *Carr* factor–favorable to the Government. *See Lord*, 915 F.3d at 1015–16; *Strother*, 977 F.3d at 445; *Herrod*, 595 F. App'x at 410–11.

Additionally, this *Carr* factor favors the Government because of statements made at the arraignment.  Specifically, Defendant said under oath that he was satisfied with House's representation and had faith and confidence in him. (Doc. 67 at 8.)  Under the above cases, this *Carr* factor weighs in favor of the Government. *See Strother*, 977 F.3d at 445; *Lord*, 915 F.3d at 1015–16; *Herrod*, 595 F. App'x at 410–11.  Further, House represented that he was satisfied that Defendant knew what he was charged with; that House had a full opportunity to investigate the facts and law as well as any possible defenses and to advise Defendant of those; and that House joined Defendant in his decision to plead guilty. (Doc. 67 at 31–32.)  Defendant acknowledged hearing the questions asked to House and House's answers, and specifically said he had no questions, concerns, or comments about the Court's questions or House's answers. (*Id.*)  Again, considering all the facts, Defendant had close assistance of counsel.

Defendant complains that House's failure to disclose the conflict denied him close assistance of counsel, but the Court rejects this argument.  Even if the failure to disclose the conflict weighed in Defendant's favor (which is questionable, given the Court's finding below that there was no prejudice from this mistake), it does not outweigh the other factors highlighted above—House's representation throughout the proceedings (including with another CJA panel member), House's negotiation of a favorable plea agreement, and Defendant's statements on the record that he was satisfied with House's representation.  In short, Defendant was not denied close assistance of counsel, and this *Carr* factor weighs heavily for the Government.

Additionally, Defendant's claim of ineffective assistance of counsel fails for lack of prejudice.  "To prevail on" a claim of a conflict of interest, Defendant "must show that his attorneys

had a conflict of interest that adversely affected their performance." *United States v. Levine*, 138 F. App'x 681, 683 (5th Cir. 2005) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980); *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005)). "Courts analyzing allegations of conflicted counsel typically ask two questions: '(1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation.' " *Id.* (quoting *Infante*, 404 F.3d at 391). "If a conflict does not adversely affect counsel's performance, no 'actual conflict' exists." *Id.* at 683–84. "An "actual conflict" exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Id.* at 684 (quoting *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (citing *Strickland*, 466 U.S. at 692). "If a defendant 'establishes an actual conflict that adversely affected counsel's performance, prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial.' " *Id.* (quoting *Perillo*, 205 F.3d at 781–82).

Thus, in *Levin*e, the Court found that defendant had not shown an actual conflict of interest because he had identified how the attorney's prior presentation of a codefendant adversely affected his representation of the defendant. *Id.* "Specifically, [defendant] has not identified any 'plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict.' " *Id.* (citing *Infante*, 404 F.3d at 393 (citing *Perillo*, 205 F.3d at 807)). "To the contrary, at oral argument, counsel for Levine acknowledged that the defense strategy Levine had followed—early and extensive cooperation followed by a guilty plea—would have been the same had Levine retained conflict-free counsel from the outset." *Id.* The appellate court concluded, "Without a specific showing of an adverse effect, no actual conflict exists. In the absence of an

actual conflict, and because the district court properly considered the *Carr* factors, we reject this ground for appeal." *Id.*

The same reasoning applies here.  The relevant objection House was investigating was to Paragraph 42 of the PSR, which involved a conviction and revocation from 2010 of which House served as prosecutor. (*See* Doc. 50 at 10; Doc. 57-1 at 1.)  But, as the Government argues, Defendant's new counsel made no objection to Paragraph 42 of the PSR (or to any other paragraph of the PSR).  (Doc. 74.)  Thus, Defendant suffered no prejudice from this conflict.

Without more, Defendant has failed to demonstrate an ineffective assistance of counsel claim.  Given the lack of any objection, Defendant's strategy "would have been the same had [he] retained conflict-free counsel from the outset." *Levine*, 138 F. App'x at 684.  Any conflict he had was thus "merely potential or hypothetical," and it did not "adversely affect" counsel's performance. *Id.* at 683.  Consequently, Defendant is not entitled to withdraw his guilty plea for ineffective assistance of counsel.[3]

### F.  Knowing and Voluntary Original Plea

#### 1. Parties' Arguments

As noted above, Defendant arguments on this factor parallel his arguments about House's defective performance.  Again, Defendant urges that "his conversations with Mr. House left him

---

[3] Defendant also complains that House allowed him to plead guilty without awaiting for the results of the lab results, but, again, he suffered no prejudice.   The LSPCL report produced after his original guilty plea merely showed different drug quantities and types. (U.S. Ex. 4, 5.)  But, that report made no difference to his mandatory minimum sentence; Defendant still pled guilty to Count Two of the Superseding Bill of Information (possession with intent to distribute the mixture or substance containing a detectable amount of methamphetamine, which carried a five-year mandatory minimum, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii)), rather than the offense involving pure methamphetamine which could have been brought (which carried a ten-year mandatory minimum, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii)). (*See* Doc. 35.)  That is to say, Count Two of the original Indictment and Superseding Bill of Information were the same, but for the omission of MDMA. (*Compare* Doc. 1, *with* Doc. 35.)  Defendant even acknowledges this. (Doc. 76-1 at 2.)  Thus, again, Defendant suffered no prejudice, and any ineffective assistance of counsel claim fails.

with the belief that those [mandatory] minimums did not necessarily apply. (Doc. 76-1 at 9.)  Once

more, Mr. House has not supplied any information to the contrary." (*Id.*)   Defendant continues:

> In spite of the language in the plea agreement and the warnings of
> the Court, Mr. Jones genuinely thought that the mandatory
> minimum sentences connected to the charges to which he pled guilty
> did not apply to his specific case. While the warning provided by
> the Court during the plea colloquy would ordinarily cure any defect
> in counsel's performance with regard to sentencing limits, the sheer
> volume of errors made by Mr. House in the defense of Mr. Jones
> suggests that he may indeed have suggested to Mr. Jones that such
> language was mere boilerplate and inapplicable to his case.
> Regardless, Mr. Jones clearly did not enter into the guilty plea
> knowingly and intentionally. Rather, he took Mr. House at his word,
> and did as he was instructed by the attorney to whom he had given
> all the money he and his family could gather together, little knowing
> that the attorney was failing to live up to his ethical obligations.

(Doc. 76-1 at 10.)

The Government responds that, to have a knowing and voluntary guilty plea, a defendant

must have full knowledge of what the plea connoted and its consequences. (Doc. 79 at 17.)  A plea

is invalid if the defendant lacked an understanding of the nature of the rights he is waiving or had

such an incomplete understanding of the charges against him that he cannot be said to have

admitted guilt. (*Id.* at 17–18.)  The Government again goes into detail about the plea colloquy and

highlights how Defendant's plea was knowing and voluntary. (*Id.* at 18.) The Government also

emphasizes two parts of the hearing in which Defendant asked questions and thus demonstrated

how closely he was paying attention. (*Id.* at 18–20.)

Additionally, the Government argues that the Court must determine that Defendant's

admitted factual conduct constitutes a violation of the statute. (*Id.* at 20.)  The Court must compare

the conduct Defendant admits to engaging in with the elements of the offense. (*Id.*)  This ensures

that the Defendant understands both the nature of the charge and this his actions fell within the

charge. (*Id.*)  The Government then returns to the re-arraignment and its colloquy and explains how this standard was met. (*Id.* at 20–21.)

### 2. Analysis

This factor looks at "whether the guilty plea was knowing and voluntary." *Lord*, 915 F.3d at 1014.  Having carefully considered the matter, the Court finds that this factor weighs heavily in favor of the Government.

"Because a guilty plea involves the waiver of constitutional rights, it must be voluntary, knowing, and intelligent." *Id*. at 1016 (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "To enter a knowing and voluntary guilty plea, a defendant must have full knowledge of what the plea connoted and of its consequences." *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *Id* (quoting *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). Further, "[t]he consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *Herrod*, 595 F. App'x at 412 (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).  "Thus, '[a]s long as the defendant understood the length of time he might possibly receive, he was fully aware of his plea's consequences.' " *Id.* (quoting *Rivera*, 898 F.2d at 447); *see also United States v. Rosales,* 281 F. App'x 424, 425 (5th Cir. 2008) (unpublished) ("[B]ecause Rosales was aware of his minimum and maximum potential sentences and understood the elements of the offense as charged, he also has not established that his guilty plea was not knowing or voluntary.") (cited with approval by *Herrod*).

Here, throughout the arraignment, the Court explained in detail Defendant's rights and ensured his understanding of them, (*see* Doc. 67 *passim*), and Defendant demonstrated throughout that hearing that his decision to plead guilty was made knowingly and voluntarily, (*id.* at 3–11, 13–22, 27–29, 33–34). Specifically, Defendant answered questions to establish his competence, (*id.* at 3–5); acknowledged that he read the Superseding Bill of Information, that he understood it, and that House answered any questions he had, (*id.* at 5–6); had the Superseding Bill of Information read to him and said he understood it and the charges against him, (*id.* at 7–8); went over his rights to Indictment, acknowledging that he understood them and that they were freely and voluntarily waived, (*id.* at 8–11); discussed the superseding plea agreement at length, had key provisions read and summarized to him, and acknowledged that he understood those provisions and the entire agreement, (*id*. at 13–22); and engaged in a colloquy to demonstrate that all of his rights were voluntarily waived and not the results of threats, force, promises outside the plea agreement,[4] or predictions about his sentence, (*id.* at 27–29). At the end of the hearing, Defendant

---

[4] As the Government notes, this particular part of the re-arraignment shows the attention Defendant paid to these proceedings:

> THE COURT: WHAT I NEXT NEED TO DO IS TO MAKE SURE THAT YOU ARE MAKING THIS PLEA FREELY AND VOLUNTARILY. HAS ANYBODY THREATENED YOU, MR. JONES, OR FORCED YOU TO PLEAD GUILTY OR SAID THAT IF YOU DON'T PLEAD GUILTY SOME ADDITIONAL CHARGES WILL BE BROUGHT OR SOME ADDITIONAL ADVERSE ACTIONS TAKEN AGAINST YOU?
>
> THE DEFENDANT: NO.
>
> THE COURT: HAS ANYBODY MADE ANY PROMISES TO GET YOU TO PLEAD GUILTY?
>
> THE DEFENDANT: YES.
>
> THE COURT: WHAT IS THAT?
>
> THE DEFENDANT: THE PLEA AGREEMENT.
>
> THE COURT: IN THE PLEA AGREEMENT, OKAY. THAT'S A

specifically said he understood the consequences of his guilty plea, that he was pleading guilty because he was in fact guilt of the charges in the Superseding Bill of Information, and that he was pleading guilty voluntarily and of his own free will. (*Id*. at 32–33.)  Thus, the record clearly demonstrates that Defendant knowingly and voluntarily waived his rights.

The record also demonstrates that Defendant certainly understood the maximum and mandatory minimum penalties he faced.  Preliminarily, at the July 10, 2019, arraignment before the Magistrate Judge, Defendant was informed of the maximum possible penalties associated with the charges against him, including the enhanced penalties. (Doc. 14.)  None of Defendant's maximum or minimum penalties changed since that time. (*Compare* Doc. 1, *with*  Doc. 35.)

Even putting this aside, at the arraignment on the Superseding Bill of Information, counsel for the Government summarized the superseding plea agreement, and she specifically noted how that agreement listed the maximum penalties and the mandatory minimums of the crimes to which Defendant was pleading guilty. (Doc. 40 at 3; Doc. 67 at 15–16.)  Defendant specifically stated that he understood counsel's summary of the agreement and that it was consistent with his understanding of it. (Doc. 67 at 16.)  He also acknowledged his signature on the document. (*Id.* at 17.)

Later, the Court expressly explained to Defendant the maximum and minimum penalties for his crimes. (*Id.* at 23–26.)  Defendant acknowledged understanding all of these penalties. (*Id.*) Indeed, as the Government points out, Defendant even demonstrated how closely he was paying

---

VERY GOOD POINT. OTHER THAN THE PLEA AGREEMENT, HAS ANYBODY MADE ANY PROMISES TO YOU TO GET YOU TO PLEAD GUILTY?

**THE DEFENDANT:** NO.

(Doc. 67 at 27–28.)

attention by asking questions to the Court during this exchange. (*Id.* at 23–24.)[5]  And Defendant

was explicitly asked if he "underst[ood] all of the consequences of [his] plea," and he said "Yes."

(*Id*. at 27.)  For all these reasons, Defendant was advised of the consequences of his plea.

---

[5] Specifically, the following colloquy took place:

> **THE COURT:** HOWEVER, IF THE COURT DETERMINES THAT YOU POSSESSED THREE PRIOR CONVICTIONS FOR A VIOLENT FELONY OR A SERIOUS DRUG OFFENSE, OR BOTH, AS DEFINED BY 18 U.S.C. SECTION 924(E) RECEIVED PRIOR TO THE DATE OF THE OFFENSE FOR WHICH YOU ARE NOW CHARGED, YOU SHALL BE SENTENCED TO A MINIMUM TERM OF IMPRISONMENT OF NOT LESS THAN 15 YEARS TO A MAXIMUM OF LIFE IMPRISONMENT, A FINE OF $250,000, OR BOTH THE MAXIMUM TERM OF IMPRISONMENT AND THE MAXIMUM FINE, AND IN ADDITION, THE COURT MAY IMPOSE A TERM OF SUPERVISED RELEASE AFTER IMPRISONMENT NOT TO EXCEED FIVE YEARS; DO YOU UNDERSTAND? DO YOU UNDERSTAND?
>
> **THE DEFENDANT:** YES.
>
> **THE COURT:** IF YOU DON'T LET ME KNOW.
>
> **THE DEFENDANT:** WHY IS THAT IMPOSED?
>
> **MR. HOUSE:** THAT'S THE RANGE.
>
> **THE COURT:** THIS IS THE RANGE. LET ME READ IT TO YOU AGAIN AND IF THERE'S ANY QUESTION I'M GOING TO LET YOU AND MR. HOUSE SIT DOWN FOR A MINUTE AND TALK ABOUT THIS, OKAY? BECAUSE I DO NEED TO MAKE SURE YOU UNDERSTAND THIS, THIS IS WHY WE GO THROUGH THIS. SO I'M GOING TO READ THIS PARAGRAPH TO YOU AGAIN. LISTEN CAREFULLY.
> HOWEVER, IF THIS COURT DETERMINES THAT YOU POSSESSED THREE PRIOR CONVICTIONS FOR A VIOLENT FELONY OR A SERIOUS DRUG OFFENSE, OR BOTH, AS DEFINED BY 18 U.S.C. SECTION 924(E) RECEIVED PRIOR TO THE DATE OF THE OFFENSE FOR WHICH YOU ARE NOW CHARGED, YOU SHALL BE SENTENCED TO A MINIMUM TERM OF IMPRISONMENT OF NOT LESS THAN 15 YEARS, TO A MAXIMUM OF LIFE IMPRISONMENT, A FINE OF $250,000, OR BOTH THE MAXIMUM TERM OF IMPRISONMENT AND THE MAXIMUM FINE, AND IN ADDITION, I MAY IMPOSE A TERM OF SUPERVISED RELEASE AFTER IMPRISONMENT NOT TO EXCEED FIVE YEARS; DO YOU UNDERSTAND?
>
> **THE DEFENDANT:** YES

(Doc. 67 at 23–24.)

"In addition," to the above requirements, "the district court must 'determine that the factual conduct to which the defendant admits is sufficient as a matter of law to constitute a violation of the statute.' " *Lord*, 915 F.3d at 1016 (quoting *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc) (emphasis omitted)). "The district court must compare '(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information' to ensure that the defendant understands not only the nature of the charge but also that his conduct falls within the charge." *Id.* (quoting *Marek*, 238 F.3d at 315). *see also United States v. Castro-Trevino*, 464 F.3d 536, 540 (5th Cir. 2006) ("The factual basis for the guilty plea must appear in the record . . . and must be sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." (quotation omitted) (alteration in original)). "The underlying purpose of the rule 'is to protect a defendant who may plead with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the definition of the crime charged.' " *Lord*, 915 F.3d at 1016 (quoting *United States v. Reasor*, 418 F.3d 466, 470 (5th Cir. 2005) (quotation omitted)).

The plea colloquy easily satisfies these requirements.  At the arraignment, counsel for the Government read a detailed factual basis to Defendant, after which Defendant stated under oath that he understood what counsel said and that that was what happened and what he did. (Doc. 67 at 19–22.)  Later, Defendant again agreed that the factual basis was what happened and what he did. (*Id.* at 29.)  The Court then reviewed each essential element of the offenses in the Superseding Bill of Information, and Defendant admitted that this is in fact what he did. (*Id.* at 29–31.)  Under these circumstances, the Court cannot say that the Defendant did not realize that his conduct fell within the definitions of the charged crimes.

As stated above, Defendant contends that the plea was not knowing and voluntary because of House's ineffective assistance of counsel. Defendant assert that the "sheer volume of errors made by Mr. House in the defense of Mr. Jones suggests that he may indeed have suggested to Mr. Jones that such language was mere boilerplate and inapplicable to his case." (Doc. 76-1 at 10)

The Court finds that Defendant's argument is unavailing. In *Strother*, defendant similarly claimed that his plea was not knowing and voluntary because he "received ineffective assistance of counsel." 977 F.3d at 446. Defendant complained that his attorney "failed to 'investigate [defendant's] conduct, analyze discovery material, and research case law to determine whether . . . [defendant's] alleged conduct was within the parameters of the statute [defendant] was deemed to violate.' " *Id.*

The Fifth Circuit rejected these arguments, explaining that defendant's "prior sworn statements at rearraignment are in tension with Strother's ineffective assistance arguments." *Id.* After detailing all of the defendant's admissions at the re-arraignment, the Court concluded:

> During his plea hearing, as noted by the magistrate judge, Strother confirmed that he was "fully satisfied" with Morgan's representation and specifically testified that he and Morgan had discussed all elements of his indictment, the facts of his case and any defense to his charge, the Federal Sentencing Guidelines, his full plea agreement, and the entire factual basis to his plea agreement.
>
> Contrary to Strother's subsequent assertion that he pleaded guilty to protect Morgan, Strother previously stated at his plea hearing that no one had attempted to force, threaten, coerce, or make him plead guilty, that he was not entering his plea to help anyone else, and that he was entering into the plea of his own free will. We give significant weight to a defendant's sworn testimony that his plea is voluntary and uncoerced. *See Clark*, 931 F.2d at 295 ("[T]he defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity.") (citation omitted); *accord Lampazianie*, 251 F.3d at 524. Given Strother's consistent testimony that he understood the elements of his charge and the consequences of his plea, and that his plea was uncoerced and the result of thorough consultation with his attorney,

35

> we conclude that the district court did not clearly err in finding that
> the sixth *Carr* factor weighed against withdrawal.

*Id.*

The same reasoning applies here.  Defendant makes a variety of complaints about House, but, again, at the arraignment, Defendant said under oath that he was satisfied with House's representation and had faith and confidence in him. (Doc. 67 at 8.)  Further, House said during the hearing that he was satisfied that Defendant knew what he was charged with. (*Id.*)  The Court also asked House if he made any representations to Defendant about the sentence the Court would impose, and House said, "We discussed the possible ranges but not what the sentence would be." (*Id.* at 32.)  Defendant acknowledged hearing the questions asked to House and House's answers, and specifically said he had no questions, concerns, or comments about the Court's questions or House's answers. (*Id.*)

Again, "[t]he defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity." *Clark*, 931 F.2d at 295 (quoting *United States v. Darling*, 766 F.2d 1095, 1101 (7th Cir. 1985)).   Considering Defendant's many declarations during the arraignment—from his understanding of the charges and penalties against him to his admissions that he did in fact commit each element of the charged crimes and statements about House—the Court finds that Defendant's guilty plea was knowing and voluntary and that this factor weighs strongly in the Government's favor. *See Herrod*, 595 F. App'x at 412 (finding this factor weighed in the Government's favor because "although Herrod contends that his attorney pressured him into accepting a plea deal, Herrod affirmed under oath at his plea hearing that his plea was 'freely and voluntarily made' and that 'no one forced [him], threatened [him], or made any promises to [him]' to induce him to plead guilty." (citing *Clark*, 931 F.2d at 295)); *Lampazianie*, 251 F.3d at 524 (noting that the "consequences of the plea were painstakingly

explained to" defendant and that he "declared—under oath—in open court that he had not been threatened or coerced in any way, and that he was entering the plea voluntarily and fully informed"); *see also Clark*, 931 F.2d at 295 (upholding the lower court's denial of a motion to withdraw a guilty plea in part because the defendant "knew what was going on. He was an intelligent individual and had adequate counsel.").

### G. Substantial Inconvenience to the Court and Waste of Judicial Resources

#### *1. Parties' Arguments*

Defendant argues:

> [W]hile Mr. House's defective performance has indisputably inconvenienced the Court—particularly in regards to the need to withdraw the first guilty plea, file a superseding bill of information, and enter a plea a second time due to his failure to wait for the lab reports verifying that the substances in Mr. Jones' possession were actually illegal drugs—allowing Mr. Jones to withdraw his plea a second time will not cause any meaningful further inconvenience. On the contrary, allowing Mr. Jones to withdraw his plea and begin the proceedings over again with competent counsel will save the judicial system—if not this particular court—a substantial amount of time and resources. If Mr. Jones is forced to go forward with his plea, he will have to address the issue of withdrawing his guilty plea again on appeal. Then, because the Fifth Circuit does not generally consider claims of ineffective assistance of counsel on direct appeal, he will have to address the legal and ethical failings of Mr. House in a petition pursuant to 28 U.S.C. § 2255. Should he be successful in either or both of these post-conviction proceedings, the case will be remanded for new proceedings with the benefit of effective assistance of counsel. Thus, the cheapest and most expedient way of dealing with the matter is to withdraw the guilty plea now, and allow Mr. Jones to proceed anew with representation from the FPD.

(Doc. 76-1 at 8.)  Similarly, Defendant urges that allowing him to withdraw his guilty plea would "actually save judicial resources in the long run," as it would be "cheaper and more efficient for him to simply withdraw the plea" now rather than having the case go through appeal and post-conviction *habeas* proceedings. (*Id.* at 12.)

The Government responds that, even if these factors don't "loom large" in this case, they are still implicated by Defendant's failure to move to withdraw until the time of sentencing. Defendant concedes as much.  Defendant has "indisputably inconvenienced the Court," and allowing him to withdraw his guilty plea without a factual or legal basis "would undermine the efficient administration of justice and waste judicial resources during an unprecedented pandemic in which limited resources are already severely taxed." (Doc. 79 at 22.)

### 2. Analysis

The final factors the Court will consider are "whether withdrawal would substantially inconvenience the court" and "the extent to which withdrawal would waste judicial resources." *Lord*, 915 F.3d at 1014 (citing *Carr*, 740 F.2d at 343–44).  Having carefully considered the matter, the Court finds that both of these factors weigh in favor of the Government.

As to the first, "[w]hen, as here, the district court has already reviewed the PSR and other materials, a motion to withdraw is disruptive to the trial docket and inconveniences the court." *Lord*, 915 F.3d at 1015 (citing *United States v. Grant*, 117 F.3d 788, 790 (5th Cir. 1997); *United States v. Adams*, 275 F. App'x 298, 300 (5th Cir. 2008) (per curiam) (unpublished)).   Further, as the Government argues, "[r]aising the matter [] late" for the first time on the morning of sentencing, "without prior notice to the court or the Assistant United States Attorney, also implicates to a limited extent concern for waste of judicial resources and inconvenience to the court, although these factors do not loom large in the present case." *United States v. Benavides*, 793 F.2d 612, 618 (5th Cir. 1986).  Moreover, the parties do not represent how long this jury trial would take, but that is not dispositive; while *Carr* found that a lengthy two to three week trial would be an inconvenience to the court, even a trial estimated to last only two days "does not necessitate a

finding that there is no inconvenience to the district court." *McKnight*, 570 F.3d at 650 (citing *Carr*, 740 F.2d at 345). Thus, the Court finds that this factor weighs in the Government's favor.

As to the second, "[t]he district court's determination as to whether the withdrawal motion would waste judicial resources is entitled to substantial deference because the district court is in the best position to know the effect that the withdrawal had on its resources." *Id.* (citing *Carr*, 740 F.2d at 345); *see also Lord*, 915 F.3d at 1017 (stating same and citing *McKnight* with approval). Here, as the Government asserted, allowing Defendant to withdraw his guilty plea after such a poor showing of the other factors (including the assertion of actual innocence) would be a considerable waste of the Court's resources.

This is particularly true given the COVID-19 pandemic; though the Governor just moved Louisiana into Phase III, the Middle District of Louisiana still has a backlog of a year's worth of civil and criminal cases to take to trial. Adding Defendant's case to the docket after he already knowingly and voluntarily admitted his guilt would be a particular inconvenience and waste of resources.

Defendant argues that rejecting his request to withdraw the guilty plea will result in the use of more judicial resources in the form of an appeal and § 2255 motion. But the Fifth Circuit rejected a similar argument in *Herrod*:

> Herrod offers no persuasive reason to disturb this finding [by the district court on this factor]. Rather, Herrod notes only that *more* judicial resources would be wasted by what "promises to be an endless parade of *pro se* pleadings and paperwork" filed by Herrod from prison. But Herrod's threat of future (possibly frivolous) filings is inapposite to whether allowing this case to go to trial will inconvenience the court or waste its resources.

*Herrod*, 595 F. App'x at 411.

The same reasoning applies here.  The Court's decision on this motion is well grounded, and the threat of an appeal and future motions from Defendant on this issue does not justify the relief he seeks.  Further, Defendant fails to take into account the resources which a ruling in his favor would entail, including (presumably) re-urged motions to suppress (with the additional briefing, hearing, and rulings this will likely warrant), a trial (of unknown length), and a possible appeal anyway if Defendant is convicted (and potentially on more grounds, depending on the issues that arise at trial).

Thus, even if Defendant appeals and files a § 2255 motion, the Court finds that there would be a greater inconvenience to the Court and waste of judicial resources if he is allowed to withdraw from his guilty plea.  These factors weigh strongly in favor of the Government.

### III.    Conclusion

In sum, there is no fair and just reason to allow Defendant to withdraw from his guilty plea. The Court finds that nearly all the *Carr* factors weigh in the Government's favor, and many weigh heavily in that direction.  Further, Defendant has failed to make a colorable claim for ineffective assistance of counsel.  Accordingly,

**IT IS ORDERED** that the *Motion to Withdraw Guilty Plea* (Doc. 76) filed by Defendant Eddie Darnell Jones, Sr., is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>April 8, 2021</u>.


**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**